UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
                                        )
EAGLE WEST INSURANCE COMPANY,           )
                                        )   Case No. C15-1098RSL
                  Plaintiff,            )
        v.                              )
                                        )   ORDER GRANTING IN PART
SAT, 2400, LLC, *et al.*,                )   SAT 2400'S MOTION FOR PARTIAL
                                        )   SUMMARY JUDGMENT AND
                  Defendants.           )   DENYING EAGLE WEST'S CROSS-
_____)    MOTION FOR PARTIAL SUMMARY
                                            JUDGMENT

This matter comes before the Court on defendant's "Motion for Partial Summary Judgment." Dkt. # 14. Plaintiff, Eagle West Insurance Company ("Eagle West"), brought this action seeking a declaratory judgment that it is not liable to defendant, SAT 2400, LLC ("SAT"), under the insurance policy ("the Policy") held by SAT. In its motion, defendant asks this Court to hold that the Policy's coverage exclusions for water damage, negligent work, and interior damage do not apply in this case. In response, plaintiff filed a cross-motion for partial summary judgment in which it asserts that its denial of coverage was proper and asks this Court to further hold that the Policy's wear and tear exclusion applies. Dkt. # 17. Having reviewed the memoranda, declarations, and exhibits submitted by the parties, the Court finds as follows:

## BACKGROUND

Early in September 2013, the Seattle area experienced a significant amount of rainfall. In

ORDER GRANTING IN PART
DEFENDANT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT

the 24 hour period ending on the morning of September 6th, a total of 1.73 inches of rainfall was recorded at SeaTac International Airport. Dkt. # 15 at 1. On the 6th, the property manager at the Stanford Apartments, owned by defendant SAT, noticed that water had begun to leak through to the building's interior. The manager went to the roof to find that the rain had overwhelmed the apartment's rooftop drainage system, in part because the roof's drain was clogged with dirt and debris. As a result, pooling water had started to leak through plumbing vent pipes at their joint collars, which stood about four inches above the roof level. Id. at 5. After the manager removed the debris, water began to flow off of the roof. Id. That day, a representative of the Stanford Apartments reported the damage to SAT's insurer, Eagle West. Dkt. # 1 at 3.

In the course of investigating SAT's claim, Eagle West hired several independent parties, including consultant Independent Roof Inspection, Inc. ("IRI"), to evaluate the damage and determine its cause. During its evaluation, IRI inspected the apartment's roof, including the roof's construction and maintenance as well as its drainage system. Dkt. # 18 at 6-7. In its report, IRI concluded that water had seeped through the building's roof in areas near the roof's drain. The report further mentioned problems with both the roof and its drain. First, IRI believed that the roof had outlived its normal useful life and had begun to show signs of age-related wear. Second, although the roof's drainage system was considered sufficient when the building was constructed in the early 1900's, IRI thought it was undersized by modern standards and lacked an ancillary drain to allow water discharge in the event the primary drain becomes clogged. Id. at 7. On October 28, 2013, Eagle West denied SAT's insurance claim, citing its investigation, drainage issues, and exclusions included in SAT's Policy. Dkt # 15 at 15. After SAT disputed Eagle West's denial of coverage, Eagle West filed this action seeking a declaratory judgment that it was not obligated to cover damage from the September 6th claim.

ORDER GRANTING IN PART
DEFENDANT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT

-2-

The Policy at issue in this case is an "all-risk" policy, under which "recovery is allowed for all fortuitous losses unless a specific exclusion applies." City of Oak Harbor v. St. Paul Mercury Ins. Co., 139 Wn. App. 68, 73 (2007) (quotation marks and citation omitted). Under the terms of SAT's Policy, Eagle West will cover property damaged by any Covered Cause of Loss. A loss is a Covered Cause of Loss unless the cause is specifically limited or excluded by the Policy. SAT asserts in its motion that Eagle West improperly denied its claim for three reasons[1]: first, that exclusions for water- and weather condition-related causes of damage do not apply to the cause of loss – excessive rainfall – at issue; second, that the Policy's exclusion for inadequate maintenance does not bar coverage; and third, that the clause limiting coverage to interior damage to situations where the exterior is first damaged is ambiguous and thus does not apply. Dkt. # 14 at 8-9. In its cross-motion, Eagle West claims its denial was proper because damage to the apartment's roof was a result of wear and tear and that, regardless, both the roof and drain were improperly maintained and thus are not covered by the Policy. Dkt. # 17 at 6. Eagle West also asserts that the exterior-damage-first clause applies and that it prevents coverage for damage to the apartment building's interior.

## DISCUSSION

### I. Standard for a Rule 56 Motion

Summary judgment is appropriate if, viewing the evidence in the light most favorable to the nonmoving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); L.A. Printex

---

[1] SAT also suggests a fourth reason that itself involves two exclusions: one excluding seepage that occurs underground and another excluding seepage and leakage that occurs over a period of at least 14 days. SAT asks this Court to rule that coverage should be allowed because the damage at issue was not underground and occurred over fewer than 14 days. Dkt. # 14 at 11. Even if a cause of damage is not excluded by one provision, however, another exclusion may still apply. SAT's motion on that issue is therefore denied.

ORDER GRANTING IN PART
DEFENDANT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT
-3-

Indus., Inc. v. Aeropostale, Inc., 676 F.3d 841, 846 (9th Cir. 2012).  The moving party "bears the initial responsibility of informing the district court of the basis for its motion." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Where the nonmoving party will bear the burden of proof at trial, the moving party need not "produce evidence showing the absence of a genuine issue of material fact," but instead may discharge its burden under Rule 56 by "pointing out . . . that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." Id. at 324.  "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient";  the opposing party must present probative evidence in support of its claim or defense. Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 919 (9th Cir. 2001).  "An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party." In re Barboza, 545 F.3d 702, 707 (9th Cir. 2008) (internal citations omitted).  On cross motions for summary judgment, the Court evaluates the motions separately, "giving the nonmoving party in each instance the benefit of all reasonable inferences." Lenz v. Universal Music Corp., No. 13-16106, 2015 WL 5315388, at *2 (9th Cir. Sept 14, 2015) (internal quotation marks and citation omitted).

**II.    Coverage Under the Insurance Policy**

Coverage under insurance policies, particularly all-risk policies, is interpreted broadly. Commonwealth Ins. Co. of Am. v. Grays Harbor Cty., 120 Wn. App. 232, 239 (2004).  When determining coverage, the initial burden of proof is on the insured to show that a loss falls within the terms of the policy. Wright v. Safeco Ins. Co. of Am., 124 Wn. App. 263, 271 (2004).  The burden then shifts to the insurer to prove that the loss is not covered because of exclusionary provisions within the policy. Id.

ORDER GRANTING IN PART
DEFENDANT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT

-4-

The parties dispute the effect of four of the Policy's provisions: three exclusions and one limitation. The Policy's water exclusion is the broadest: if the rain event at issue is excluded, SAT cannot recover for any damage it claims occurred to the apartment building's interior or exterior. The Policy's exclusion of damage that results from "faulty, inadequate or defective" ("negligent") types of work may exclude damage to the building's exterior as a result of maintenance work on the building's roof or rooftop drainage system. The negligent work exclusion, however, contains an ensuing loss clause. Pursuant to this clause, if the rain event qualifies as a Covered Cause of Loss, then the resulting damage is covered by the Policy regardless of any inadequate maintenance. The third exclusion prevents recovery for damage that results from ongoing wear and tear and in this case would apply only to the building's exterior. The fourth and final provision limits coverage for damage to the building's interior unless a Covered Cause of Loss first damages, and then enters through, the exterior. Under this limitation, damage to the building's interior is covered only if the rain event is both a Covered Cause of Loss and if it reached the interior due to exterior damage caused by the rain event. If rain water reached the interior due to exterior damage that resulted from inadequate maintenance or wear and tear, the interior damage is not covered.

### A.   The Water Exclusion

The broadest exclusion at issue excludes coverage for "damage caused by or resulting from" any "water that backs up or overflows from a sewer, drain or sump."[2] The parties agree that the operative exclusionary term is "overflows." See Dkt. # 26 at 14. Eagle West contends that "[t]he evidence here indicates an overflow situation" because water pooled on the apartment's roof as a result of a debris blocking its drain. Dkt. # 17 at 20. The interpretive

---

[2] The parties agree that the "backs up" term does not apply in this situation because the water was never able to effectively enter the apartment's drain. Dkt. # 17 at 20; Dkt. # 26 at 13.

ORDER GRANTING IN PART
DEFENDANT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT

-5-

question is whether the water that collected on the apartment's roof "overflow[ed] from" the rooftop drain and is thus an excluded cause of loss. This term is undefined by the Policy and should be given a "plain, ordinary, and popular meaning." Int'l Marine Underwriters v. ABCD Marine, LLC, 179 Wn. 2d 274, 284 (2013).

One place to look to determine a word's plain meaning is a standard English dictionary. Id. The dictionary definition of "overflow" – "to flow over the edge or top of (something)," *Overflow*, Webster's Third New International Dictionary 1607 (1981) – is not, however, particularly helpful. For example, that definition alone does not distinguish between when water "overflows" a drain that is filled with too much liquid and when water flows over (but not into) a capped drain. The operative term in this case is "from," which Webster's defines as a word "used as a function word to indicate a starting point." *From*, Webster's Third New International Dictionary 913 (1981). For water to overflow *from* something, it must first start in a reservoir and spill out over its edges, rather than merely pass over it. On that basis, water overflows from a drain when it exceeds the drain's capacity, not when its flow is diverted entirely. Reading "overflow from" in this way comports with other courts' interpretations. E.g., Korean Cmty. Presbyterian Church v. Maryland Cas. Co., No. 1:14-CV-3690-TWT, 2015 WL 5026999, at *2 (N.D. Ga. Aug. 25, 2015) (finding that "no water backed up or overflowed from a drain" when considering a blockage outside the drain). This interpretation also squares with common usage: trash overflows from a waste basket because the basket was already full, not because the lid was sealed shut.

In this case, the parties agree that the building's rooftop drain was blocked by debris. Dkt. # 17 at 20; Dkt. # 26 at 11. The result was not that water overwhelmed the drain's capacity, but rather that the clogged drain was unable to divert water effectively to begin with. Because the Policy does not address this specific peril – when water cannot enter a blocked drain – the

ORDER GRANTING IN PART
DEFENDANT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT

-6-

damage caused by that peril is a Covered Cause of Loss.[3] SAT's motion seeking a declaration that the water exclusion does not apply to this case is granted.

### B.    The Negligent Work Exclusion

The Policy excludes damage that is "caused by or result[s] from" "faulty, inadequate or defective" work (including, for example, faulty design or inadequate maintenance). To justify its denial of coverage, Eagle West argues that the apartment's water damage was caused by poor "maintenance" and "workmanship" of the drain and roof. Dkt. # 17 at 18. SAT disagrees,[4] and in the alternative argues that the exclusion's ensuing loss clause requires coverage regardless of any negligent work. Dkt. # 14 at 14-16. The ensuing loss clause, contained within the negligent work exclusion, states that even if damage is caused by negligent work, "if loss or damage by a Covered Cause of Loss results, [Eagle West] will pay for that resulting loss or damage."

Ensuing loss clauses operate as an exception to a coverage exclusion. The Washington State Supreme Court has explained that "[s]uch clauses ensure that if one of the specified

---

[3] It is important to distinguish the conclusion that the September 6th rain event is a Covered Cause of Loss from a conclusion that all damage to the apartment building is covered. To the extent the apartment building was independently damaged by other, excluded causes of loss and not by the rain event, that damage would not be covered by the Policy. For example, if a portion of a building's roof had been improperly installed, the fact that damage was caused by a Covered Cause of Loss does not mean that the insured can recover for that improper installation. Likewise, an insured cannot recover for things that were independently damaged by causes excluded by the Policy, like normal wear and tear. Those other exclusions are discussed more fully below.

[4] Even though the parties contest the factual circumstances surrounding how the drain became clogged and the roof's state of repair at the time, compare Dkt. # 17 at 19 ("IRI's findings above . . . show that conditions beyond a clogged drain reveal the poor maintenance and workmanship that created conditions that helped cause the ponding of water on the roof."), with Dkt. # 26 at 11 ("Eagle West has presented no evidence regarding how SAT maintained the drain screen, or in what manner the maintenance was 'faulty, inadequate, or defective.'"), interpretation of the Policy's ensuing loss provision is a question of law appropriately resolved on summary judgment. Allstate Ins. Co. V. Peasley, 131 Wn.2d 420, 423-24 (1997).

ORDER GRANTING IN PART
DEFENDANT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT

-7-

uncovered events takes place, any ensuing loss which is otherwise covered by the policy will remain covered." Vision One, LLC v. Philadelphia Indem. Ins. Co., 174 Wn. 2d 501, 515 (2012) (quotation marks and citation omitted).  For example, in Vision One, poor design and workmanship of a concrete structure caused the structure to collapse, resulting in significant damage and delay.  Id. at 506.  Even though Vision One's insurance policy excluded coverage for faulty workmanship, that exclusion's ensuing loss clause meant that "damages resulting from faulty workmanship [were] covered if they [were] caused by an otherwise covered event."  Id. at 517.  The court concluded that, because the policy covered damage from collapse, the ensuing loss clause resulted in coverage despite the structure's faulty design.  Id. at 517-18.

The negligent work exclusion's ensuing loss clause has the same effect in this case as in Vision One.  Even assuming that the apartment's roof or drain were inadequately maintained and thus excluded causes of loss, the resulting damage is covered if there was an ensuing Covered Cause of Loss.  Because the rooftop pooling of water, discussed above, is not excluded "overflow," it is a Covered Cause of Loss.  Operation of the ensuing loss clause means that damage resulting from the water pooling is covered under the policy unless limited in some other fashion.

It is worth noting again that this holding does not mean that all damage to the apartment is covered.  Although an ensuing loss clause allows for coverage of losses subsequently caused by a Covered Cause of Loss, it does not cover damage from causes that are themselves excluded. For example, in Sprague v. Safeco Insurance Co. of America, 174 Wn.2d 524 (2012), homeowners whose deck had decayed due to faulty workmanship could not recover for the deck's imminent collapse, even though collapse was covered by their policy.  Unlike in Vision One, where collapse resulted in damage to other property, the loss in Sprague was only to the deck itself.  Had the deck actually collapsed and damaged other property, the policy's ensuing

ORDER GRANTING IN PART
DEFENDANT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT

loss clause would have applied and allowed recovery; without the collapse and ensuing damage, no recovery was allowed. Id. at 530-31.[5] Applying the principle from Sprague to this case, SAT cannot recover for the elements of the roof that themselves were inadequately maintained. SAT may, however, recover for damage to portions of the roof that were adequately maintained and subsequently damaged by rainwater infiltration as well as other losses ensuing from the covered rainfall and pooling water. Determining the extent to which specific items of damage fall within one category or the other cannot be determined in the context of this motion.

With the understanding that operation of the ensuing loss clause does not mean all damage to the apartment building's roof is covered, the ensuing loss clause applies in this case and SAT's motion for summary judgment on this issue is granted.

### C. The Wear and Tear Exclusion

In its cross-motion, Eagle West asserts that any roof damage in this case is excluded under the Policy's negligent work exclusion and its wear and tear exclusion. Dkt. # 17 at 17-18. Resolving the effect of the negligent work exclusion and wear and tear exclusion requires factual determinations inappropriate for summary judgment.

SAT asks this Court to hold that the wear and tear exclusion is inapplicable because Eagle West's denial letter did not assert that exclusion as a reason for denying coverage. Dkt. # 26 at 8. In some instances, an insurer may be estopped from raising grounds for denial not cited in its

---

[5] A hypothetical from Vision One also helps explain the principle:
> Suppose a contractor miswires a home's electrical system, resulting in a fire and significant damage to the home. And suppose the homeowner's policy excludes losses caused by faulty workmanship, but the exclusion contains an ensuing loss clause. In this situation, the ensuing loss clause would preserve coverage for damages caused by the fire. But it would not cover losses caused by the miswiring that the policy otherwise excludes. Nor would the ensuing loss clause provide coverage for the cost of correcting the faulty wiring.

Vision One, 174 Wn.2d at 515.

ORDER GRANTING IN PART
DEFENDANT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT

initial denial letter.  See, e.g., Hayden v. Mut. of Enumclaw Ins. Co., 141 Wn.2d 55, 62-63 (2000) (noting that a plaintiff seeking an estoppel remedy against an insurer's novel ground of denial must show bad faith or prejudice).  SAT has not suggested that it has been prejudiced by Eagle West's denial and does not claim the denial was made in bad faith.  The Court will neither hold that damage to the roof is categorically excluded from coverage, nor will it prevent Eagle West from making a showing that excluded causes of damage justify denial of coverage.  Both parties' motions relating to application of the negligent work and wear and tear exclusions are denied.

### D. The Exterior-Damage-First Exclusion

Even if damage is not excluded under the provisions discussed above, an endorsement to the Policy purports to limit damage to a building's interior unless the damaging elements first caused damage to, and then entered through, the building's exterior.  The legal effect of this limitation is disputed.  The relevant language and structure, reproduced below, serves as a helpful interpretive guide:

> A. Coverage
>
>> We will pay for direct physical loss or damage . . . caused by or resulting from any Covered Cause of Loss.
>
> . . . .
>
>> 3. Covered Causes of Loss
>>
>>> Risks of Direct Physical Loss unless the loss is:
>>>
>>>> a. Excluded in Section B., Exclusions; or
>>>>
>>>> b. Limited in Paragraph A.4., Limitations; that follow.
>>
>> 4. Limitations
>>
>>> . . . .

ORDER GRANTING IN PART
DEFENDANT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT

> e. The interior of any building or structure . . . caused by or resulting from rain . . . unless:
>
> > (1) The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain . . . enters.

The parties contest the effect of subsection (e) because it does not include words that clearly communicate the limitation. This apparent drafting oversight contrasts with clauses (a) through (d), which specifically state limitations like "[Eagle West] will not pay for loss of or damage to . . ." or "With respect to glass . . . [Eagle West] will not pay more than $500." SAT claims this lack of specific limiting language in subsection (e) is fatal, and asks this Court to hold that the limitation does not apply. Dkt. # 14 at 17-19. Eagle West argues that the limitation can be read in only one way, which in effect imports the language: "[Eagle West] will not cover damage to . . . ."

Interpreting this limitation pits various rules of contract construction against each other. To start, contractual terms are construed against the drafter, McKasson v. Johnson, 178 Wn. App. 422, 429 (2013), and "exclusionary clauses should be construed against the insurer with special strictness." McAllister v. Agora Syndicate, Inc., 103 Wn. App. 106, 109 (2000). The primary purpose of contract interpretation, however, is to determine the parties' intent. Shafer v. Bd. of Trustees of Sandy Hook Yacht Club Estates, Inc., 76 Wn. App. 267, 275 (1994). A term should not be construed against its drafter "unless the intent of the parties cannot otherwise be determined." Washington Prof'l Real Estate LLC v. Young, 163 Wn. App. 800, 818 (2011). When giving effect to the parties' intent, "Washington courts apply the 'context rule' of contract interpretation, which allows a court, while viewing the contract as a whole, to consider . . . [among other things] the reasonableness of the parties' respective interpretations." Id. (citations

ORDER GRANTING IN PART
DEFENDANT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT

-11-

omitted).  Furthermore, "[a]n interpretation which gives effect to all of the words in a contract provision is favored over one which renders some of the language meaningless or ineffective. . . . If only one reasonable meaning can be ascribed to the agreement when viewed in context, that meaning necessarily reflects the parties' intent."  GMAC v. Everett Chevrolet, Inc., 179 Wn. App. 126, 135 (2014) (quotation marks and citations omitted).

The Policy is structured so that the scope of its coverage is limited by terms defined in later sub-sections.  Whether a particular sub-section limits or excludes an event from qualifying as a Covered Cause of Loss depends on where that sub-section is situated within the context of the Policy.  Although subsection (e) is imprecise if limited strictly to its own terms, the clause's context and the Policy's structure provide guidance. Reading subsection (e) in context results in the following: "[Eagle West] will pay for direct physical loss or damage . . . caused by or resulting from any [Risks of Direct Physical Loss unless the loss is: . . . [The interior of any building or structure . . . caused by or resulting from rain . . . unless: (1) The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain . . . enters.]]"  Although SAT is correct that the rain limitation lacks the same preamble contained in other parts of the limitations section, that omission does not make the limitation ambiguous.

The Court rejects SAT's proposal that the clause should be read out of the Policy for at least two reasons.  First, Washington law requires courts to avoid reading ambiguity into a contract when possible.  GMAC, 179 Wn. App. at 135. SAT's search for ambiguity led it to conclude that "it is impossible to determine whether the parties intended subparagraph 'e' to bar coverage altogether, to limit coverage to a particular dollar amount, or something else." Dkt. # 14 at 18.  The construction provided above shows otherwise: Eagle West will cover damage resulting from physical loss unless the loss is to the interior of a building.  The Policy's language makes no suggestion that the parties intended to place a cap on interior damages, and importing a

ORDER GRANTING IN PART
DEFENDANT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT

cap from other limitations would be improper.  The fact that the clause could have been more clearly drafted, or drafted in a manner more similar to the other limitations clauses, does not make it ambiguous.  Second, a contract's construction should give effect to all of its language.  GMAC, 179 Wn. App. at 135.  Rather than suggest some alternative interpretation, SAT proposes that this Court omit the limitation altogether.  SAT's construction fails to give meaning to all of the policy's terms and would significantly alter the policy's coverage.  Such a substantial change would contradict the parties' demonstrated intent, which was to add the limitation to the Policy.

Washington law favors reading the limitation to do what it says – to limit coverage for loss to the building's interior unless rain first damages, and then enters through, the building's exterior.  Neither party requested a declaration applying, and the Court has not considered application of, the exterior-damage-first exclusion in this case.  SAT's motion for summary judgment on this issue is denied.

Based on the reasons discussed, defendants' motion for partial summary judgment is GRANTED in part; plaintiffs' cross-motion for partial summary judgment is DENIED.

Dated this 19th day of May, 2016.

Robert S. Lasnik
United States District Judge

ORDER GRANTING IN PART
DEFENDANT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT

-13-